# CASES

IN THE

# SUPREME COURT OF PENNSYLVANIA.

MIDDLE DISTRICT, MAY TERM, 1831.

Lancaster, May, 1831.

## ALLEN surviving WALLACE, executors of ELDER, *against* MARTIN and HENRY GETZ, and the SAME *against* the SAME.

B. G. died intestate, seized of land in *Lancaster* county, and several tracts of land in *Dauphin* county, D. E., the son-in-law of B. G., took, in 1807, the lands in *Dauphin* at the appraisement in the Orphans' Court, and entered into a recognizance to the heirs, embracing the aggregate valuation of these different tracts, which were valued separately. D. E. died in 1809, first having made his will, directing his executors to sell real estate, to pay his debts, and devising to his wife, the daughter of B. G., a legacy of 100*l.* and one-third of his real estate for life. The legacy was paid to her in 1809, and she gave a receipt for it. After the death of D. E., suits were brought against the estate of B. G., upon which judgments were recovered, and some of the lands taken by D. E. were sold under them, for a price much below the valuation of them. In 1813 the executors of D. E. sold one of the tracts taken to M., and covenanted to execute a deed in fee simple to M., and procure and deliver releases from the heirs of B. G.; a second article was subsequently, in the same year, made between them, in which they covenanted to refund, in case M. lost the land by "counter claim." M. went into possession, and in 1814 paid the hand money, and executed bonds for the balance of the purchase money. The executors then executed a deed to M. The executors paid several of the heirs of B. G. in full, and several in part, and took general receipts from each, on account of his interest in the recognizance; and, in 1817, the executors settled an administration account in which they took credit for these receipts. In a suit brought by the executors on two of the bonds, six others being also unpaid, held that a verdict, finding for the plaintiff, by the direction of the court, the money to remain in court, until releases are executed, or the lien of the recognizances as respects the land sold to M. removed, was as favorable for the defendant, as he had a right, in law and equity to claim, and that if the defendant had any defence at all, it was of the slightest equitable shade.

The recognizance created a lien on the tract taken by D. E. and sold to M., only to the amount of the valuation of that tract, and not the amount of the aggregate valuation of all the tracts taken, especially against a *bona fide* purchaser.

By receiving and accepting the legacy bequeathed to her, and not asserting any claim to the land for more than *twenty-one years*, the right of the *widow of D. E.* to her share of the land in fee simple, as one of the heirs of B. G. was barred. The lapse of time, connected with the adverse possession of the land, would bar her by the statute of limitation.

As the incumbrance was known by the defendant when he bought, and he took a special covenant in respect to it, as the executors had no other funds to satisfy the recognizance, and the amount due by the defendant was more than enough to pay the balance due the heirs on the recognizance, the existence of the incumbrance did not bar the right of the plaintiff to recover.

Under the circumstances of the case, the estate of D. E. was entitled to a credit on the recognizance to the amount of the appraisement of the lands sold at sheriff's sale, to pay the debts of B. G.

The payment of the heirs to whom the recognizances was due, and their receipts were enough, without producing formal releases.

The administration account in which these receipts were credited, the receipts being proved, was evidence.

(Allen *v.* Allen.)

In a suit by a vendor against a vendee, to recover the purchase money, a deed executed by the vendor is evidence, although the fact of the tender or delivery is disputed.  It is for the jury to decide whether it was tendered or delivered.

Appeal by the defendants from the judgments of the Circuit Court of *Dauphin* county.

In that court these two actions were tried together by the same jury, who rendered separate verdicts in each, and they were argued here together.    They were founded on two bonds given by the defendants to *James Wallace* and *William Allen*, executors of *David Elder*, deceased, dated on the 4th day of June, 1814, one conditioned to pay $324 38, on the 1st May, 1815, and the other the like sum, on the 1st May, 1816.   Issue was joined in each case on the plea of payment with leave to give the special matter in evidence.

The defendants alleged that these bonds were given in part of the consideration for a tract of land sold by the plaintiffs to them, by articles of agreement, dated the 19th July, 1813, between *James Wallace* and *William Allen*, executors of *David Elder* and *Martin Getz*, by which the said *Wallace* and *Allen*, executors, &c. did covenant that "they will, on or before the 1st day of May next ensuing, &c. make, execute and deliver unto the said *Martin Getz*, his heirs and assigns, a deed in fee simple, conveying all the right and title which *David Elder* had and held at the time of his decease, in and to a certain tract of land in the township and county aforesaid, being part of, &c.    Said *Wallace* and *Allen* further agree and covenant that they will procure and deliver unto the said *Martin Getz*, his heirs and assigns, good and sufficient releases from the heirs or legal representatives of *Bartram Galbraith*, deceased, for their interest in said land, except the release of *Henrietta Green*, late *Henrietta Galbraith*, widow and relict of said deceased."   On the 10th August following, a second article of agreement, written upon the same paper, was executed between the same parties, by which it was "Further agreed that the said *Wallace* and *Allen*, are to take out a patent for said land as soon as the same can be conveniently done, and in case the expense of patenting the same amounts to upwards of two hundred dollars, whatever it is above that sum, *Getz* is to pay in cash at the delivery of the deed.    The expense of surveying and writing, the parties are to pay equally between them. And in case any counter claim should hereafter arise, by which the said *Getz*, his heirs or assigns, should be ejected and finally lose the land; all the money which he or they shall have paid for said land, shall be refunded to him or them."   The defendants showed in evidence that *Bartram Galbraith*, who was the father-in-law of *David Elder*, died before 1806, seized, beside land in *Lancaster* county, of sundry tracts in *Dauphin* county; and that, upon the petition of *David Elder*, in right of his wife, a proceeding was

40

(Allen *v*. Allen.)

had in the Orphans' Court of *Dauphin* county, by which these tracts of land were appraised, each separately, and the title to them vested in the said *David* under that proceeding; who, on the 7th of January, 1807, with *D. Ferguson* and *William Allen* as his sureties, entered into a recognizance in the sum of $10,739 to the heirs of *B. Galbraith*, with whom, *Josiah* having been advanced in his father's life-time was not included.

There were nine other children, *Mrs. Elder*, the wife of *D. Elder*, being one. Although each tract of land was valued separately there was but one recognizance for all. The tract, agreed to be conveyed to *Martin Getz*, was one of them, and was valued at $3190. This recognizance remained open and unsatisfied.

*David Elder* died in 1809, having made a will authorizing his executors to complete sales made by him, and to make sales speedily to pay his debts, and giving to his widow his personal property, or so much as she should select, and 100*l.* and one-third of his real estate for life. He appointed *Wallace* and *Allen* his executors.

The plaintiff then offered in evidence a deed from the executors, *Wallace* and *Allen*, to *Martin Getz*, bearing even date with the bonds sued, and stated that he would prove it to have been delivered. This was objected to by the defendants, but their objection was over-ruled, and the evidence admitted; the court saying it will be for the jury to decide whether it was delivered and accepted; and besides, that without it, there was no evidence that the bonds were given in consideration of this land. The plaintiff gave in evidence a patent to the executors for the land in question, dated the 8th November, 1815, and another deed from them to *Martin Getz*, after the date of the patent, but which had not been delivered. There was a good deal of testimony as to the first deed having been in the hands of *Getz*, that it had been shewn to an attorney by him, and returned to the scrivener; but there was no evidence as to why it was so returned.

There was some evidence as to the executors having then obtained a patent, and directed a new deed to be written, and that *Getz* agreed to come and pay some money, but that he never did.

It was in evidence that when *B. Galbraith* died there were certain suits pending against him, which were revived against his executors and pursued to judgments; upon which executions issued, and certain of the lands taken by *Elder* at the appraisement at $2876 were sold. The plaintiff contended that this amounted to a discharge of the recognizance to the extent of this appraised value of the land thus sold, but the defendants alleged that *D. Elder* ought to have paid these judgments, and would be entitled to a credit to the amount of the debts so recovered only, which was much less than this appraised value.

(Allen *v.* Allen.)

The administration account settled by *Wallace* and *Allen* in the Orphans' Court of *Dauphin* county, in 1817, and never appealed from, together with the receipts of the several heirs credited in it, with proof of the execution of the receipts, was offered in evidence by the plaintiff to show that many of the heirs of *B. Galbraith* were paid off, and all partly paid. The defendants objected to the evidence, and insisted that nothing but releases from the heirs should be received, the objection was over-ruled, and the evidence admitted. The plaintiff showed releases from *Josiah,* and *Samuel,* and another. The payments evidenced by the administration account and receipts in one way of stating the account amounted to satisfaction of three others of the heirs, and of about one-half of the amount due to the rest.

The defendants alleged that *Mrs. Elder,* the daughter of *B. Galbraith,* and widow of *D. Elder,* was entitled to her share of the land taken by her husband, in fee simple, to meet which the plaintiff offered her receipt in 1809 of the bequests to her by the will of *D. Elder,* and proof that she had never claimed any thing since, nor given notice to the defendants of any claim. This evidence was objected to, but received.

The plaintiff also gave in evidence six bonds, from the defendants to the executors, each for $324 38, bearing even date with those in suit, and payable in 1817, 18, 19, 20, 21 and 22, and filed a paper stipulating that in the event of a recovery, the money should remain in court until satisfaction should be entered on the recognizance, or releases from the heirs obtained. The defendant *Getz,* after he bought, entered into possession, in which he still continued.

The Circuit Court charged the jury in substance as follows:·

*B. Galbraith* had estate in *Lancaster,* and other places; of the settlement of that estate we know nothing. His administrators ought to have appeared and defended the suits brought against his estate in evidence in this cause. *Elder* was no more bound to do so than any other of the heirs; besides he was dead, and his executors were not the representatives of *Galbraith.* It is said they ought to have paid the money, and saved a sacrifice of the land sold at sheriff's sale. This is a point of some nicety. If there were personal estate, or lands not appraised, and taken, the executors ought to have paid those judgments.

In point of fact, the heir who takes land at the valuation is seldom able to pay, unless he can raise the money, or part of it, from the land taken. If incumbrances prevent him from disposing of the land taken, or from getting the price when he has disposed of it; and if he must pay off all the incumbrances on the estate, then the whole burden is thrown upon him. Perhaps this would be the case, and not unfairly, if he took the whole estate. But if one takes

only one part, and others other parts, then it would be unfair to sub-
ject one to the burden of the whole estate, and any loss which
might be consequent upon it.  Each of the heirs who took, is equal-
ly bound to pay these incumbrances; and in this case it is conceded
that *Galbraith* left lands in *Lancaster*, and other counties.

*Elder* had paid much to the heirs before the amount of the debts
against the estate was ascertained by judgments.

These lands, taken by him at the appraisement, being swept away
by the debts of the intestate, he is discharged from the valuation at
which they were so taken.    But it is not necessary to decide this for
each tract, in the hands of a purchaser, is bound for its own valua-
tion, and no more, especially after such delay as the heirs have exhi-
bited in this case.    To ascertain how much of this valuation has
been paid to each heir is no easy matter.    The heirs are not before
us, and ought not to be bound by our decision.    They may be com-
pelled in two ways to appear, either in the Orphans' Court, or in this
court upon an application for the distribution of the money, when
brought into court.  They will then be heard if they choose to ap-
pear, or if they do not they will be bound by the decision.    The
court then directs you to pass over all the calculations of how much
will go to each heir, in the event of a recovery, leaving that to be
settled when each heir is present; and come to the inquiry, whether
there can be a recovery at all?

Generally a man must comply with all the conditions of his con-
tract; but these conditions may be waived.    *Getz* was not bound
upon his article, had it rested there, to pay or give his bonds.    But
he says he paid the hand money, and it is certain that he gave these
bonds.    By these bonds he bound himself to pay at certain periods,
expressed in them.    A second contract under seal, is as valid
as the first.    Here there is no allegation of fraud, and care must be
taken to produce none, in fact.

A man may refuse to accept a deed, or to give bonds under the
contract, unless the article of agreement is complied with by the
vendor.    *Getz* might have moved off the land, and been clear of
his bargain.    But if a vendee passes by the objection to the exe-
cution of the contract, takes a deed, or gives bonds, his situation is
so far changed that he has to resort to what has been called an equit-
able defence.    Now *Getz* gave bonds binding himself to pay, and
it is alleged he accepted a deed.

A defence at law and in equity is different in some countries,
because obtained in different courts; here both are in the same court.
A chancellor would compel the heirs to release on receiving their
money, and his decree would vest the title.    Here the judgment
or decree of a competent court will as effectually bar the heirs, and
save *Getz*.  This will be obtained on paying his money into court,

(Allen *v.* Allen.)

and it is equity and law that it should be done. It is the only method of compelling a release here. We stop the money until the release is given.

It must be remembered that a purchaser cannot keep the land and the price too. *Getz* has paid money, given bonds, and continued the possession of the land for upwards of seventeen years; he cannot retain the land, and refuse to pay; but care must be taken that he is not injured.

Releases are not necessary to make his title good. If satisfaction be entered on the recognizance, so far as respects this tract of land, the title will be good. There ought, on the evidence, to be a verdict for the plaintiff, the money to be retained in court until the several heirs are cited, under the act of 1827, or they are cited in the Orphans' Court, or their releases are filed. The money to be taken out by each heir according to his right. The deeds and releases to be lodged in court for the defendants.

The court is aware that the act of 1827 relates to money arising on sheriff's sales; but I would extend it by equitable construction, or I would exercise a similar authority under the equitable power of the court.

Verdicts were rendered for the plaintiff: "The money to remain in court until releases are executed, or the lien of the recognizance entered into by *David Elder* in the Orphans' Court of *Dauphin* county, be discharged, as respects the tract of land for which the bonds in suit were given."

A motion for a new trial was made by the defendants, which, being over-ruled by the Circuit Court; the cause was brought by appeal to this court, when the following reasons for a new trial, upon which the motion in the Circuit Court was made and argued, were insisted on:

"1. That the Court permitted illegal evidence to go to the jury, to wit: receipts to be given in evidence, to affect the rights of the defendants, of which they had no notice other than that of their being exhibited on the trial of the causes.

"2. That the Court permitted the items in the administration account of the plaintiff's testator's estate to be given in evidence to the jury, without any notice to the defendants that such account or payments existed.

"3. That the Court admitted a deed executed by the plaintiffs in those suits to the defendants, as evidence of the execution of the contract on their part, although the said deed was never delivered to the defendants, nor accepted by them, but rejected by them, because the lands were not then patented, nor releases obtained then, nor since, from the heirs of *Bartram Galbraith*, deceased.

"4. The Court erred in point of law in their charge to the jury

(Allen *v.* Allen.)

for this, that they charged that the recognizance in the Orphans' Court of the 20th January, 1808, was not a lien on the lands decreed to the plaintiff's testator in right of his wife, but only bound each separate tract for the amount of the sum for which it was appraised.

"5. The Court charged the jury that the widow of the testator, having received a legacy of £100, bequeathed to her by the will of the testator, divested her of her fee in the estate which descended from her father, *Bartram Galbraith*, deceased, and that the defendants held it discharged therefrom.

"6. The Court charged the jury, that the defendant, having paid the first portion of money, and given his bonds, in all things complied with the covenants he was to perform, (although the plaintiffs had in no way performed theirs,) and was precluded from setting up either a legal or equitable defence on account of still existing incumbrances, to the plaintiff's right of recovery; and under these circumstances directed the jury to find a verdict for the plaintiff, for the amount of the moneys due on the bonds, subject to certain modifications contained in the verdict, prout the same.

"7. The Court charged the jury that, although it was proved on the trial that the estate purchased by the defendant was incumbered for the money for which it was appraised to the heirs of *Bartram Galbraith*, deceased, to more than the amount of the bonds in suit, the plaintiffs had a right to recover, and directed the jury to find, for the plaintiffs, subject to certain terms in the verdict.

"8. The direction for the defendants to bring the money, and leave it with the Prothonotary, to await the discharge of the recognizance, or the production of the releases of the heirs of *Bartram Galbraith* deceased, is erroneous, because it would require the defendants to pay before the discharge of the recognizance, or receipt of said releases, which would be unjust.

*Fisher* for the appellants.

The construction of the article of agreement is obvious. It required the vendor to make a deed on the 1st May, 1814, clear of incumbrances, and to procure releases from the heirs of *Galbraith*, and deliver them to the vendee. Instead of which the deed offered to the defendants does not even contain a covenant against incumbrances, but merely a covenant that the executors had done nothing to encumber the estate.

When this deed was shown to the counsel, he objected that releases should have been given; but then the vendor had got the money and the bonds of the defendants. Neither law nor equity will compel a party to take any other title than that which he contracted for.

The plaintiff had contracted to deliver releases, and he was

(Allen *v.* Allen.)

bound to obtain and deliver them.   Besides, without these releases to show the satisfaction of the recognizance, his title would not be merchantable.   Receipts, or other evidence of payment in the hands of the executors, would not answer this purpose.   Until the plaintiff has complied with all the covenants on his part, he cannot call on the defendant to perform his contract, or pay his money.

When the title is defective, or incumbrances exist, the vendor cannot recover from the vendee.   *Hart* v. *Porter,* 5. *Serg. & Rawle,* 201.   *Sugden on Ven.* 312.   *Castle* v. *Cook,* 8. *Serg. & Rawle,* 293   *Stoddard* v. *Smith,* 5.  *Bin.* 355.

The title which the executors undertook to convey was defective. *Mrs. Elder* was entitled, as the daughter of *Galbraith,* to one-ninth of this land in fee simple, by inheritance.   *Ridgeway* v. *Hain.* 16 *Serg. & Rawle,* 60.  *Stoolfoos* v. *Jinkins,* 8 *Serg. & Rawle,* 167.   This never was divested, and as to this part of the land the title was, and is defective.

The Circuit Court considered that the legacy of £100 bequeathed to her by her husband, *D. Elder,* her acceptance of the same, and the fact that she had not brought suit, divested her title.

It will be remarked that this £100 is bequeathed to her to keep house with, as it is expressed in the will.   It was for the benefit of her children, and not for her own benefit; and it cannot be that receiving such a legacy will bar her right to the land which descended to her from her father.

The acts of 1797, and 1811, the only acts of Assembly, on this subject, refer to cases, in which a devise is made to a widow expressly in lieu of dower.   When there is a bequest or devise to a widow, it may compel her to elect to take either under, or against the will.

But it has never been held, that a bare acceptance of a legacy, would bar her right, unless it has been done with a full knowledge of all the circumstances, and the effect which such acceptance would produce.   If a person were to purchase his own estate ignorantly, chancery would compel the purchase-money to be refunded.   Here she must have acted upon an ignorance of her rights, and the effect which is attempted to be inferred from her act, an act of accepting a trifling legacy, and not particularly for her benefit, but for that of her children. .  *Duncan* v. *Duncan,* 2 *Yeates,* 302.   *Sugden on Ven.* 148.

Besides this defect of title, the land was incumbered to the extent of the recognizance entered into by *D. Elder,* and could not with that incumbrance impending over it, have been merchantable in the hands of the purchasers.   At all events, he contended the verdict if rendered for the plaintiff, should have been upon condition, that no execution should issue until the title was perfected.

(Allen *v.* Allen.)

The administration account he argued, should not have been received in evidence. *Getz* was no party to it, and although it might be conclusive upon a party, as to him it would furnish no evidence of payment. It was equally erroneous to permit the receipts to go in evidence, and thus substitute for the performance of a positive covenant to procure releases, evidence of payment of an inferior, and unsatisfactory kind. He referred also to *Sugden on Ven.* 210. 5 *Ves. Jr.* 565. *Marlow* v. *Smith,* 2 *Peer. W.* 201.

*Elder* and *Hopkins* for the Appellees.

The article of agreement expressly pledges the personal responsibility of the executors to procure releases. This is the scope of their covenant; and by the second article they covenant thus: In case the bond should be lost by a counter claim, they would refund. If a party create a provision of his own, he must abide by it; and he may waive any protection, or advantage which the law gives him, by making such provision for himself. *Sugden on Ven.* 312. Here the defendant had full knowledge of the nature of the title, as appears by the very terms of the article, and of the incumbrance upon it, and with that knowledge he took these covenants. Where an incumbrance is equally within the knowledge of the vendor, and vendee, and the vendee take from the vendor a covenant against incumbrances, and the vendee gives his bonds for the purchase money, the incumbrance cannot be set up as a defence against the payment of the bonds, where no injury has been sustained from it. *Fuhrman* v. *Loudon,* 13 *Serg. & Rawle,* 386. In addition to the security which is provided by the defendant, in these covenants, six bonds, beside these in suit, yet remain to be paid, and also the bond to the widow, the interest on which only is to be paid during her life, and at her death the principal to the heirs.

Under these circumstances by permitting the plaintiff to recover, the means are put into his hand to procure the releases insisted on; and by the condition upon which the verdict is given, the defendant is protected from all injustice.

The case of *Cook & Castle,* 8 *Serg. & Rawle,* decides the point, that a payment discharges the incumbrance, and formal releases need not be obtained. But besides this twenty three years had elapsed from the time when recognizance was given, and they contended, that this lapse of time, longer than that which would vest an absolute title by possession in the land, would bar the lien, at all events as against a purchaser.

The heirs in fact received all the money which had been paid by the defendants. The moment they touched that money, they confirmed the agreement, and they would have been enjoined to proceed on the recognizance, *Colton & Wilson,* 3 *Peer. W.* 190.

(Allen *v.* Getz.)

The covenant to get releases is indefinite as to time, and the executors no doubt looked to the money obtained from the contract to discharge the recognizance, and obtain them.

It is sufficient if the vendor have a title at the time of the decree for specific performance. *Langford* v. *Pitt* 2 *Peer W.* 229.

By efflux of time the purchaser was safe as to this incumbrance at the time of the trial. The same principle which has been decided to apply to payments is certainly applicable to a recognizance. *Cope* v. *Humphreys*, 14 *Serg. & R.*, 15.

The payments made by the executors on the recognizance would keep it alive as to the recognizors, but as to the purchaser, the effect of lapse of time is forfeited by these payments.

The administration account was evidence. They contended that as it was passed upon public notice, it was conclusive upon all persons.

The deed was rightly permitted to go in evidence. Whether it was delivered or not, was a question for the jury, which they have decided affirmatively.

As to the interest of Mrs. *Elder*, in the fee simple, they argued that a person may take under a will, or not, at his election, but that he cannot receive the bounty of the testator, and derange the provisions of his will by taking against them. Here *D. Elder*, not only bequeathed £100 to his widow, but directed the sale of his whole estate, and bequeathed to her the one third, &c. He amalgamates her estate with his own; and he gives her £100 in preference to any body else. She had the one-ninth, but he makes a better provision for her by giving her the one-third.

As he directed his estate to be sold; to permit her to take under the will, and also assert her title to this one ninth, would not only conflict with a well established principle, but would in so great a degree destroy the value of the estate, that it would have been most imprudent for her to do so. She made her election discreetly, and is bound by it. *Strutford* v. *Strutford, Cases in Tempore Talbot*, 176. *Nays* v. *Moredant*, 2 *Vern.* 58. *Powel on D.* 443. *Robert* v. *Kingsley*, 1 *Vesey, Jr.* 238. She has acquiesced from 1809 to 1830, during which time, so long ago as 1814, the sale was made to the defendant. She surely cannot now, after such a lapse of time return to her election, as against a purchaser, even although she might have received the legacy in mistake of her rights. The right of election is surely not open after twenty-one years: as against a purchaser, much less should be enough.

It does not now lay in the mouth of the defendant to say he is not bound to take a doubtful title. He has taken the title such as it is. *Martin* v. *Ives*, 17 *Serg. & Rawle*, 366.

A conditional verdict is the mode by which our common-law

41.

courts reach that which is accomplished by a decree in equity, and the defendant should not complain of it when under the circumstances of the case, they contended, the verdict should have been for the plaintiff without condition.

*Fisher* for the appellant in reply.

If the article of agreement required the defendant to take a deed with a covenant, then the argument is correct: but he did not agree to take the present covenant of the executors; but the covenants in the article are mutual and dependant, binding the grantors to execute a deed, and procure releases before they can call on the purchaser to pay. The case of *Fuhrman* v. *Loudon*, differs from this, in that no deed such as was required by the contract was tendered, and no deed was in fact accepted; and there was no evidence of its delivery, and without some evidence of delivery, it should not have gone to the jury. In *Fuhrman* v. *Loudon*, the incumbrance was not only known, but there was a specific covenant against the incumbrance, but in our case the covenant is not against the incumbrance, but that releases of the incumbrance should be obtained.

The receipts showed a general payment on account of the recognizance: would this answer to satisfy a purchaser? or in a suit on the recognizance would they show a payment in discharge of such portion of it as was a lien on this land.

Neither the widow nor the recognizance was barred by lapse of time. 1 *Vesey*, 238. In this case election was allowed to be made at the time of the decree; if suits were brought by her it would come within the principle of this case, now to allow her to make her election.

If the devise is not inconsistent with her claim to dower, taking the former, will not bar the latter. *Powel on Powers*, 454. The same principle applies to heirs; and there is no inconsistency in taking the legacy of £100, and claiming her interest in the land, and it is plain that one-ninth of the estate in fee simple, is better than one-third for life.

If the money which had been received by the executors from the defendant, had been applied to the payment of the recognizance on this particular tract, and the heirs had so received it with the knowledge of the source from which it was derived, then they might have been bound. But this was not the case. The payments made were general and the receipts are as general as the payments.

The opinion of the Court was delivered by

KENNEDY, J.—The first reason assigned for a new trial, in this case, appears not to have existed in fact: but if it had, the receipts were

still properly admitted as the defendants did not specially object to their being given in evidence because no previous notice had been given by the plaintiffs to the defendants of their intention to do so. In connection with these receipts, the administration account of the plaintiff's testator's estate, which is complained of in the second reason, was also given in evidence, and rightly so; the genuineness of the receipts having been first proved. The items in this account, which were given in evidence, were the entries of the receipts, and the account itself having passed the Orphans' Court, without any appeal being taken from the decree of the Orphans' Court, approving and allowing the same, was a confirmation of the correctness of the receipts.

In the third reason, the defendants complain that the deed of conveyance by the plaintiffs to the defendant, *M. Getz,* was given in evidence, although never delivered to, nor accepted of, by them, but rejected by them, &c. This is and was the allegation of the defendants on the trial of the cause; but evidence was adduced and given by the plaintiff, shewing that they had actually delivered the deed, and that it was accepted of by the defendants: and the answer of the learned Judge in the Circuit Court to this objection by the defendants to the deed, being given in evidence was strictly correct; which was that the fact of the deed's having been delivered and accepted was disputed; and as the plaintiff had given evidence of its having been so delivered and accepted, it must go to the jury to be decided by them whether it was so or not. This must have been the case, however slight the evidence might have been of the delivery and acceptance of the deed; and it would have been clearly error had it been ruled otherwise.

I can perceive no error in that part of the charge of the Circuit Court to the jury, embraced in the fourth reason. It has been directed by the Supreme Court of this State, that a recognizance taken of an heir of an intestate, in the Orphans' Court upon its decreeing to him the real estate of the intestate, after that he has elected to take the same at a valuation thereof, made in order to secure the payment of the respective portions of such valuation to the other heirs, is no lien upon the lands of the sureties, nor even upon any other lands of the heir, or person taking the estate. I consider the charge of the Circuit Court on this point, in exact accordance with the decision of this court heretofore. The spirit, if not the letter of. the decision, in *Allen v. Reesor,* 16 *S. & R.* 10, is that the recognizance creates a lien upon the land only taken by the party under the decree of the Orphans' Court, to the amount of that part of the valuation money, which he is thereby bound to pay to the other persons interested in the estate. I consider this to be the law on this subject, and agreeable to the universal under-

41*

standing and practice of the state in regard to it. There was, therefore, no error in the charge of the Circuit Court, on this point; because, although *David Elder* took several tracts of land, and parcels of the real estate of *Bartram Galbraith*, and entered into but one recognizance containing the aggregate of the appraisement of the several tracts, yet each tract was appraised and valued separately by the inquest and so returned and confirmed by the Orphans' Court; so that the sum of money which the lands in question was really charged with under the recognizance, according to the principle here laid down, appeared upon the records of the Orphans' Court, in which the recognizance was taken. There is an equity in the case which gives to the lien of the recognizance this direction, and limits the extent of its operation within reasonable bounds. The more especially ought it to be confined to each tract separately for the amount of money merely to be paid for and on account of such tract after it has been sold for a valuable consideration to a *bona fide* purchaser by the taker under the decree of the Orphans' Court.

With regard to the fifth reason, it is well settled that a devisee or legatee, who accepts of a devise or legacy under a will by which the testator has devised or bequeathed the estate or property of such devisee or legatee to another person, thereby elects to give up and surrender all his right and title to it, and agrees that the disposition so made of it, shall take effect. This is a general rule, and it forms no exception to it, that the legatee or devisee is the widow of the testator. Nor can any reason be assigned, that I can perceive, why she should be exempted from the operation of this rule. It is founded in great justice, for no one could well imagine that the testator would have devised or bequeathed such portion of his own estate even to his wife, if he had known that she would oppose his will in another part, by claiming and taking the property which he had thereby given to another. In this case, a portion of *David Elder*, the testator's estate is given to the widow by the will, which she received and accepted in 1809. By the same will he has directed the lands in question to be sold, embracing that interest in them, which the defendants in this suit say belongs to her, amounting to an undivided ninth part, and the moneys arising therefrom to be disposed of, after paying his debts, among her and his children. This land was sold by *David Elder's* executors to one of the defendants, on the 19th day of July, 1813. No claim at any time since the death of the testator, in the year 1809, has ever been made by the widow to any part of his land; although she was well acquainted with the will of her husband, and the disposition made of this land by the executors under it. It is now twenty-two years since she became a *feme sole*, and might have asserted her claim to this land,

(Allen *v.* Getz.)

or a portion of it, if she had ever intended it; during all this time it has been possessed and held adversely to her, and not having made any claim, it appears to me that she is barred by the statute of limitations. But surely the acceptance of the legacy and the length of time that has elapsed without her having made any claim to the land is, as the Circuit Court said on this point, a bar to any such claim now.

As to the sixth reason assigned by the defendants for a new trial, it is material to observe that the claims of the plaintiff in these actions are founded upon bonds: that these bonds were given, after three hundred and fifty pounds had been paid in pursuance of the articles of agreement entered into for the purchase of the land, already mentioned. That a deed of conveyance bearing the same date of the bonds, was executed also in pursuance of the same articles, and produced on the trial; and some evidence given of its delivery by the plaintiff to the defendants. Upon these bonds the plaintiff had a good right of action at law. The defendants, however, allege that the land which was purchased and formed the consideration for giving those bonds, is incumbered by the lien of a recognizance, taken in the Orphans' Court, which is still in force and unsatisfied. It must also be observed that this recognizance was known to the parties at the time of contracting and a special covenant introduced into the articles of agreement, respecting this claim, that the plaintiffs should procure sufficient releases from the heirs for it: and that the plaintiffs acting as executors had no other funds or means by which they could satisfy this recognizance and procure releases than by a sale of the lands. It appeared that three of the heirs had released, and that three others had been paid their respective portions, after crediting on the recognizance, the amount of the appraisement of the lands in the Orphans' Court, taken by the recognizor and afterwards taken in execution and sold from him to pay the debts of *Bartram Galbraith,* the intestate, which I think under the circumstances of the case, the estate of *David Elder,* the recognizor was justly entitled to. The widow of *David Elder,* another of the heirs had no claim under this recognizance, and the three remaining heirs, as it appeared were paid in part, and that the money remaining to be paid by the defendants of their purchase would be more than sufficient to satisfy the whole of the heirs.

Under these circumstances and this view of the case, if there was any defence, whatever, on the part of the defendants, it was one of the very slightest equitable shade. I however, do not think that it was sufficient to form a bar to the plaintiff's recovery. This was an incumberance known to the parties at the time of contracting and the defendants in making their contract, have taken care to provide themselves with a remedy, in case they should ever sustain any

(Allen *v.* Getz.)

damage by reason of this lien, by a covenant introduced for that purpose into the articles of agreement. As yet it is not pretended, that they have sustained any.    But even in an equitable point of view, it does not appear to me that they have any colour of defence. It appeared on the trial of these causes, that all moneys received by the plaintiff on the sales of lands bound by this recognizance have been faithfully applied to the discharge of it; and that the defendants, by refusing to make payment of these and the other bonds, have prevented the plaintiff from extinguishing the lien of this recognizance on the land which they purchased. The defendant who is the purchaser of the land is in the full and undisturbed enjoyment of it.    He knew when he gave these bonds, that the recognizance was unpaid, and from the situation of *Elder's* estate and the character in which the plaintiff was acting, that the money to secure the payment of which these bonds were given, was intended to be applied to the payment of it; and to permit them to retain both money and land, would instead of equity, be the highest iniquity.    The charge of the Circuit Court, therefore, in directing the jury that the recognizance under these circumstances, did not present a bar to the plaintiff's recovery, but at the same time telling the jury that the plaintiff ought to be restrained from taking the money out of court, until releases were either procured or satisfaction entered upon the recognizance, was as favorable a direction for the defendants as they had any right, either in law or equity to claim.

The charge of the Circuit Court, has been misapprehended by the counsel for the defendants in making out their seventh reason, and is not sustained in fact.

The eighth reason has been fully answered already, in noticing the sixth, which disposes of all the defendant's reasons for a new trial.    The judgment of the Circuit Court must be affirmed.

GIBSON, C. J.—Being related to parties having an interest in this cause, took no part.

Judgment affirmed.